U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 1 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DAVID LEWIS BUILDERS, INC.,       §
                                  §
            Plaintiff,            §
                                  §
VS.                               §   NO. 4:09-CV-218-A
                                  §
MID-CONTINENT CASUALTY COMPANY,   §
                                  §
            Defendant.            §


MEMORANDUM OPINION
and
ORDER

     This action started as an action by plaintiff, David Lewis

Builders, Inc., ("Lewis") against defendant, Mid-Continent

Casualty Company, ("Mid-Continent") for recovery of damages,

reasonable attorneys' fees, pre-judgment and post-judgment

interest, and costs of court based on Mid-Continent's denial of

coverage under a commercial liability insurance policy issued by

Mid-Continent to Lewis, a home builder, for a claim made against

Lewis by Gary Blake and Malisa Blake ("the Blakes") for whom

Lewis had contracted to construct a house.  Mid-Continent filed a

counterclaim seeking a declaration that the insurance policy

issued by it to Lewis did not provide coverage for the Blakes'

claim against Lewis.  Before the court for decision is a motion

for summary judgment of Mid-Continent seeking an adjudication that the insurance policy does not provide insurance coverage for the claim.   After having considered the pleadings, the motion for summary judgment, Lewis's response thereto, Mid-Continent's reply, the summary judgment record, and applicable legal authorities, the court has concluded that the motion should be granted.

I.

History of the Litigation

This action was filed in the District Court of Tarrant County, Texas, 352nd Judicial District, on March 16, 2009.   Mid-Continent removed the action to this court on April 20, 2009.   It was assigned to the docket of the Honorable Terry Means.   On May 26, 2009, Mid-Continent filed its amended answer and its counterclaim for declaratory relief.[1]   On September 22, 2009, Mid-Continent filed its motion for summary judgment, supporting brief, and appendix.   Lewis filed its response and supporting brief on October 9, 2009, to which Mid-Continent replied on October 13, 2009.   On March 24, 2010, Judge Means filed a notice

---

[1]Lewis failed to file an answer in response to the counterclaim, as required by Rule 12(a)(1)(B) of the Federal Rules of Civil Procedure.  However, Mid-Continent has not sought entry of default as to the counterclaim, and it appears that Mid-Continent has elected to waive its right to move for such an entry of default.

2

of recusal, and the action was transferred to the docket of the
undersigned.

II.

Lewis's Complaint and Mid-Continent's Counterclaim

A.    The Complaint

In summary, Lewis alleged in its complaint that:

Mid-Continent issued a commercial liability insurance policy
to Lewis.  Because of an increase in water beneath the ground
surface of the foundation of the house being constructed by Lewis
for the Blakes, the house was damaged.  Thereafter, the Blakes
entered into another contract with Lewis that contemplated that
Lewis would repair the house at an estimated cost to Lewis of
between $500,000 and $550,000, of which Lewis was to be
compensated in the amount of $142,000 by one of the
subcontractors on the job, causing Lewis to have damages in
excess of $400,000 for which Lewis sued Mid-Continent.  Mid-
Continent denied insurance coverage for the damage, giving
several reasons for the denial, none of which is valid.

B.   <u>Mid-Continent's Counterclaim</u>

A summary statement of Mid-Continent's counterclaim is as follows:

In June 2008 the Blakes filed a state court suit against Lewis and others alleging that Lewis failed to properly construct the Blakes' house.  Construction on the house began in October 2004 and continued until completion in November 2005.  Mid-Continent had issued to Lewis a comprehensive general liability insurance policy effective beginning May 25, 2005, and ending May 25, 2006.  Lewis tendered the defense of the Blakes' state court suit against it to Mid-Continent, but Mid-Continent declined to provide a defense and disclaimed insurance coverage because the claim the Blakes were making against Lewis was not covered under the terms of the insurance policy.  Thereafter, Lewis and the Blakes entered into the settlement agreement Lewis mentioned in its complaint.

Mid-Continent contended that there are exclusions from the basic liability insurance coverage provided by the policy that prevent coverage as to the claim made by the Blakes against Lewis in the state court suit.  Because of the policy exclusions, Mid-Continent had no obligation to make any payment in response to

4

the claim or to provide a defense for Lewis in the state court suit.  Mid-Continent seeks a declaratory judgment to that effect.

III.

The Motion for Summary Judgment
and Lewis's Response

A.    The Motion

Mid-Continent moved for summary judgment on the following grounds:

First Ground.  The contractual liability exclusion contained in the insurance policy excluded from coverage the Blakes' claim against Lewis.

Second Ground.  Exclusions in the policy that preclude coverage for damage to property on which Lewis was working that must be restored or replaced because Lewis's work was incorrectly performed prevented coverage for the claim.

Third Ground.  The policy exclusion pertaining to property damage to Lewis's work causes there not to be coverage for the claim.

Mid-Continent argues that each of the exclusions mentioned above causes it not to have any payment obligation under the insurance policy as to the Blakes' claim and not to have had an obligation to defend Lewis in the state court suit.

5

B.   Lewis's Response

Lewis responded that none of the policy exclusions upon which Mid-Continent relies is applicable.

IV.

Analysis

A.   Burdens of Proof

In a diversity action such as this, Texas law determines which party has the burden of proof on pertinent issues of fact. Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc., 783 F.2d 1234, 1240 (5th Cir. 1986).   Texas law places the burden to prove the existence of insurance coverage under an insurance policy on the party claiming coverage.   Guar. Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998).   An insurer has the burden to prove the applicability of any policy exclusion. Id.; see also Telepak v. United Servs. Auto. Ass'n, 887 S.W.2d 506, 507 (Tex. App.--San Antonio 1994, writ denied); Tex. Ins. Code Ann. § 554.002 (Vernon 2009).   The insured has the burden to prove the applicability of an exception to an exclusion.   Vic Mfg. Co., 143 F.3d at 193.   The burdens of proof in a declaratory judgment action brought by an insurer seeking a declaration of non-coverage are the same as they would be if the action had been brought by the insured against the insurance company claiming the

existence of coverage for a particular claim or event.  See Pace Corp. v. Jackson, 284 S.W.2d 340, 350 (Tex. 1955); McCart v. Cain, 416 S.W.2d 463, 465 (Tex. Civ. App.--Fort Worth 1967, writ ref'd n.r.e.).

B.   Summary Disposition Is Appropriate in This Case

This action is particularly suited for summary disposition under the rules and standards expressed by the Supreme Court in Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Celotex Corp. v. Catrett, 477 U.S. 37 (1986); and Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  There is no genuine dispute as to any material fact.  The court need only look to the undisputed facts in light of controlling legal principles to determine whether, in the first instance, the undisputed facts contain the elements of Lewis's claim of coverage, and then, if they do, whether the elements of any policy exclusion on which Mid-Continent relies exist.

C.   Purpose of Liability Insurance Coverage for a Builder, Generally Speaking

Before considering applicability of specific policy language, the court notes that, as a general proposition, the purpose of liability insurance coverage for a builder is to protect the insured from liability resulting from property damage

7

(or bodily injury) caused by the insured's product, but not for the replacement or repair of that product.  See T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co., 784 S.W.2d 692, 694-95 (Tex. App.--Houston [14th Dist.] 1989, writ denied).  The Bateson court explained that if an insurance policy were to be interpreted as providing coverage for construction deficiencies, the effect would be to "enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work."  Id. at 695.  Ordinarily, this is not the intended function of liability insurance.  And, as the Fifth Circuit explained in Hartford Casualty Co. v. Cruse, a case involving the scope of liability insurance coverage for a builder, "[a] comprehensive general liability policy does not cover [the] cost of doing business."  938 F.2d 601, 604 (5th Cir. 1991).

That is not to say that a liability insurance policy cannot be worded in such a way that its coverage can extend to cost of replacement or repair of the builder's work.  However, the wording of the insurance policy issued by Mid-Continent to Lewis makes clear that it had no such intent as to a claim of the kind the Blakes made against Lewis.

D.   The Nature of the Claim Made by the Blakes in Their
     State Court Suit Against Lewis

Although the allegations of Lewis's complaint indicate that
Lewis is basing its claim for recovery from Mid-Continent in some
respect on its settlement agreement with the Blakes, the true
basis of Lewis's claim against Mid-Continent is the claim the
Blakes made against Lewis in the state court suit.  The
settlement agreement was but a settlement of that claim, and did
not create a new factual basis for claimed insurance coverage.
Thus, the court looks to the factual allegations of the state
court suit of the Blakes against Lewis to determine whether the
Blakes were seeking by their suit to cause Lewis to "become[]
legally obligated to pay [] damages because of 'property damage'
to which [the] insurance applies."  Mot., App. at 211.

In Century Surety Co. v. Hardscape Construction Specialties,
Inc., the Fifth Circuit said that "to determine the nature of a
Texas lawsuit, we must look to the substance of the cause of
action and not necessarily the manner in which it was pleaded."
578 F.3d 262, 267 (5th Cir. 2009) (brackets & internal quotation
marks omitted).  The Fifth Circuit further explained in Century
Surety that "Texas courts characterize actions as tort or
contract by focusing on the source of liability and the nature of

the plaintiff's loss," providing as authority for that statement

the following quotation from Southwestern Bell Telephone Co. v.

DeLanney, 809 S.W.2d 493, 494-95 & n.2 (Tex. 1991):

> As one prominent authority has explained:  Tort
> obligations are in general obligations that are imposed
> by law--apart from and independent of promises made and
> therefore apart from the manifested intention of the
> parties--to avoid injury to others. If the defendant's
> conduct--such as negligently burning down a house--
> would give rise to liability independent of the fact
> that a contract exists between the parties, the
> plaintiff's claim may also sound in tort.  Conversely,
> if the defendant's conduct--such as failing to publish
> an advertisement--would give rise to liability only
> because it breaches the parties' agreement, the
> plaintiff's claim ordinarily sounds only in contract.
>
> In determining whether the plaintiff may recover
> on a tort theory, it is also instructive to examine the
> nature of the plaintiff's loss. When the only loss or
> damage is to the subject matter of the contract, the
> plaintiff's action is ordinarily on the contract.

578 F.3d at 267 (internal quotation marks omitted).

All of the factual allegations in the Blakes' state court

suit against Lewis are predicated on obligations assumed by Lewis

under its contract to build a house for the Blakes.  None of the

duties the Blakes contend in the state court suit were violated

by Lewis would have existed independently of the contractual

relationship between the Blakes and Lewis.  In other words, if

the Blakes were to be successful in their state court suit

against Lewis, their success necessarily would depend on their

establishment of the contractual relationship between them and
Lewis and a breach of a duty or duties created by that contract.

The first count of the state court petition charges Lewis
with breach of contract.  The other counts allege violations of
the Texas Deceptive Trade Practices-Consumer Protection Act
(Count II), Breach of Express Warranties (Count III), Breach of
Implied Warranties (Count IV), and Negligence (Count V).  Each of
the counts is based on the contractual relationship existing
between the Blakes and Lewis.  Counts II, III, IV, and V each
adopts allegations made in preceding paragraphs of the complaint,
with the result that each of those counts alleges the existence
and breach of the contract as predicate facts to the theory of
recovery alleged in the count.

Count II is predicated on the Blakes having sought or
acquired by purchase certain goods and services, necessarily
referring to the contractual relationship existing between the
Blakes and Lewis.  Included in Count II is an allegation that
Lewis breached its express and implied warranties to the Blakes
that Lewis would construct the Blakes' dwelling in a good and
workmanlike manner and in accordance with standard industry
practice.  Of course, the warranties, express and implied, to
which reference was made in Count II and that form the express

11

bases for the theories of recovery alleged in Counts III and IV, are warranties that arise from, and exist only because of, the contractual relationship between the Blakes and Lewis. Similarly, the Count V negligence theory of recovery is based directly on obligations assumed by Lewis under its contract with the Blakes, as is clearly shown by the allegations on which the negligence theory is expressly predicated that Lewis owed the Blakes "a duty to perform its contract with care, skill, reasonable expedience and faithfulness" and that Lewis breached its contractual duty to the Blakes by committing the various acts that are alleged in Count V to have been negligence.

Moreover, the allegations of the Blakes' state court pleading make clear that the only loss or damage suffered by the Blakes was the subject matter of their contract with Lewis--the house that Lewis contracted to build for them. The nature of the Blakes' loss is that they did not receive from Lewis the house they contracted for.

Paraphrasing language used by the Texas Supreme Court in <u>Jim Walter Homes, Inc. v. Reed</u>, "[t]he [Blakes'] injury was that the house they were promised and paid for was not the house they received. This can only be characterized as a breach of contract . . . ." 711 S.W.2d 617, 618 (Tex. 1986). Thus, by contending

12

that the insurance policy issued by Mid-Continent provides

liability insurance coverage for the Blakes' claim against Lewis,

Lewis is, in effect, seeking reimbursement under its liability

insurance policy for costs required to complete the proper

performance of its construction contract with the Blakes.

E.    The Basic Payment and Defense Obligations Language of
      the Insurance Policy

The basic payment and defense obligations of the insurance

policy issued by Mid-Continent to Lewis, as stated in the

policy's Insuring Agreement, read, in pertinent part, as follows:

> We will pay those sums that the insured becomes legally
> obligated to pay as damages because of . . . "property
> damage" to which this insurance applies.  We will have
> the right and duty to defend the insured against any
> "suit" seeking those damages. However, we will have no
> duty to defend the insured against any "suit" seeking
> damages for . . . "property damage" to which this
> insurance does not apply.

Mot., App. at 211.

Mid-Continent does not take the position in its summary

judgment motion that the Blakes' claim against Lewis in the state

court suit was not for "damages because of property damage."

Instead, it pitches its motion entirely on alleged applicability

of policy exclusions.  Consistent with Mid-Continent's summary

judgment presentation, the court assumes, for the sake of this

memorandum opinion, that Mid-Continent is not entitled to a

summary adjudication in its favor unless one of the exclusions upon which it relies applies.  The court now considers those exclusions.

F.    The Exclusions upon Which Mid-Continent Relies as the
      Grounds of its Motion

      1.    The Contractual Liability Exclusion

The policy contains a contractual liability exclusion saying that:

> This insurance does not apply to:
>
>       . . . .
>
>       . . . "[P]roperty damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
>
>       (1)   That the insured would have in the absence of the contract or agreement; or
>
>       (2)   Assumed in a contract or agreement that is an "insured contract", provided the . . . "property damage" occurs subsequent to the execution of the contract or agreement.

Id. at 212.  The policy definition of "insured contract" does not contain any language that would cause the "insured contract" exception contained in the contractual liability exclusion to have applicability to this case.  See id. at 221.

The court is of the opinion that there is a reasonable interpretation of this exclusion that would cause it to prevent

14

coverage for the breach of contract claim made by the Blakes against Lewis in the state court suit.   Unfortunately for Mid-Continent, the Fifth Circuit and at least one Texas intermediate appellate court have said that there is another interpretation of the exclusion that is at least as reasonable that causes it not to be applicable to the Blakes' breach of contract claim.[2]   In Federated Mutual Insurance Co. v. Grapevine Excavation Inc., the Fifth Circuit said that the contractual liability exclusion "operates to deny coverage when the insured assumes responsibility for the conduct of a third party."   197 F.3d 720, 726 (5th Cir. 1999).   The Fifth Circuit went on to say in Federated Mutual that as the insured in that case was "not being sued as the contractual indemnitor of a third party's conduct, but rather for its own conduct, the exclusion is inapplicable." Id.   In support of its interpretation of the exclusion, the Fifth Circuit cited with approval Olympic, Inc. v. Providence Washington Insurance Co., 648 P.2d 1008, 1011 (Alaska 1982). Federated Mutual, 197 F.3d at 726 n.28.   Olympic is a clear holding that such an exclusion does not refer to liability of the

---

[2]Under Texas law, if language of an insurance policy is subject to more than one reasonable interpretation, the interpretation most favorable to the insured must be adopted.  Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 769 (5th Cir. 1999).

insured that results from the insured's breach of contract but
only refers to liability incurred when the insured promises to
indemnify or hold harmless another:

> "Liability assumed by the insured under any contract"
> refers to liability incurred when one promises to
> indemnify or hold harmless another, and does not refer
> to the liability that results from breach of contract.

648 P.2d at 1011.

In _Lennar Corp. v. Great American Insurance Co._, a Texas
intermediate appellate court, following the lead of the Fifth
Circuit in _Federated Mutual_ and of the Alaska Supreme Court in
_Olympic_, had the following to say about the contractual liability
exclusion:

> Exclusion B(2) precludes coverage when the insured
> contractually assumes liability for the conduct of a
> _third party_ such as through an indemnity or hold
> harmless agreement.  Lennar's settlement of the EIFS
> claims was not contractual assumption of a third
> party's liability, but rather resulted from Lennar's
> own conduct

200 S.W.3d 651, 693 (Tex. App.--Houston [14th Dist.] 2006, pet.
denied) (citations omitted).  The _Lennar_ court cited with
approval the opinion of the Southern District of Texas in
_Insurance Co. of North America v. McCarthy Brothers Co._, 123 F.
Supp. 2d 373 (S.D. Tex. 2000), for the proposition that the
"assumption of liability exclusion did not preclude coverage for

insured builder's agreement through settlement to repair damage
caused by its faulty construction because insured accepted
liability for its own conduct--not liability of a third party."
200 S.W.3d at 693 (internal quotation marks omitted).

Therefore, though the court suspects that the true intent of
the insurance company might well have been ignored in the court
opinions mentioned above, the court considers that it has no
choice but to follow the Fifth Circuit and Texas court precedent
that leads to the conclusion that the contractual liability
exclusion does not exclude from coverage the Blakes' claim
against Lewis.

2.   <u>Exclusions j.(5) and (6)</u>

Exclusions j.(5) and (6) read as follows:

This insurance does not apply to:

j.   "Property damage" to:

     . . . .

     (5)   That particular part of real property on
           which you or any contractors or
           subcontractors working directly or indirectly
           on your behalf are performing operations, if
           the "property damage" arise[s] out of those
           operations. . . . or

     (6)   That particular part of any property that
           must be restored, repaired or replaced
           because "your work" was incorrectly performed
           on it.  This exclusion does not apply to

17

. . . "property damage" included in the
"products-completed operations hazard".

Mot., App. at 244.

The policy describes the "products-completed operations

hazard," in pertinent part, as follows:

"Products-completed operations hazard":

a.    Includes all . . . "property damage" occurring
away from premises you own or rent and arising out
of "your product" or "your work" except:

(1)   Products that are still in your physical
possession; or

(2)   Work that has not yet been completed or
abandoned.  However, "your work" will be
deemed completed at the earliest of the
following times:

(a)   When all of the work called for in your
contract has been completed.

(b)   When all of the work to be done at the
job site has been completed if your
contract calls for work at more than one
job site.

(c)   When that part of the work done at a job
site has been put to its intended use by
any person or organization other than
another contractor or subcontractor
working on the same project.

Work that may need service, maintenance,
correction, repair or replacement, but which
is otherwise complete, will be treated as
completed.

Id. at 240.

18

The policy defines "property damage" to mean:

a.   Physical injury to tangible property, including
     all resulting loss of use of that property.  All
     such loss of use shall be deemed to occur at the
     time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not
     physically injured.  All such loss of use shall be
     deemed to occur at the time of the "occurrence"
     that caused it.

Id.

The term "Your work" is defined in the policy as follows:

"Your work"

a.   Means:

     (1)   Work or operations performed by you or
           on your behalf; and

     (2)   Materials, parts or equipment furnished in
           connection with such work or operations.

b.   Includes:

     (1)   Warranties or representations made at any
           time with respect to the fitness, quality,
           durability, performance or use of "your
           work"; and

     (2)   The providing of or failure to provide
           warnings or instructions.

Id. at 241.

One of the goals of the exclusions discussed under this

subheading is to prevent Mid-Continent from having liability

under the policy for exactly the kind of claim the Blakes made against Lewis in their state court suit.

The state court suit of the Blakes that Lewis asked Mid-Continent to defend describes the construction problems about which the Blakes were complaining as having started with a hairline crack in the garage floor and in the exterior areas, which worsened and extended into other areas.  Summary judgment evidence establishes that the cracks commenced before the construction of the house was completed and before the house was occupied by the Blakes.  The allegations made by the Blakes in the state court suit, and the summary judgment evidence, are that the cause of the cracks in the house was an upheaval of the foundation caused by expansion of the soil under the foundation by reason of wet conditions of the soil.  Put another way, the undisputed summary judgment evidence is that the problem of which the Blakes complained was the failure of Lewis, perhaps through a subcontractor, to cause the foundation to be designed and constructed in such a way that it would not be subject to deflection by reason of expansion of the soil under the foundation.  The Blakes alleged in their state court suit that the "foundation design [was] wholly inappropriate for the site." Mot, App. at 4, ¶ 15.  The foundation was designed by a person

20

acting on behalf of Lewis as its subcontractor.  The design of a proper foundation was one of the contractual obligations Lewis had to the Blakes pursuant to their construction contract.

Exclusion j.(6) appears to be directly applicable.  Several parts of the building constructed by Lewis had to be repaired because its "work" was incorrectly performed on the property. The "property damage" about which the Blakes complained in their claim against Lewis was not included in "products-completed operations hazard" because Lewis's "work" (construction of the house) had not been completed or abandoned, and the house had not been occupied, before the condition that caused the damage to the house commenced and manifested itself.  Indeed, Lewis acknowledges in its responsive brief that "[t]he products-completed operations hazard . . . does not apply, as the work had not yet been completed or abandoned, or put to its intended use by a person other than in the contractor or subcontractor." Responsive Br. at 5, ¶ 5.

Moreover, a fair reading of exclusion j.(5) suggests that it likewise is applicable to the Blakes' claim against Lewis.  Lewis was performing operations on the real property (the building on the land owned by the Blakes), the damage was to the building (which was that particular part of the real property on which

21

Lewis and its subcontractor were performing operations), and the
damage of which the Blakes complained arose out of those
operations, i.e., the design and placement of the foundation.

When discussing the effect of exclusions similar to j.(5)
and (6), the Fifth Circuit, applying Texas law, explained in
Hartford Casualty Co. v. Cruse that:

> Thus a contractor cannot recover from the insurer for
> "his own failure to perform his contract," but can
> recover for damage other than to his own work, whether
> or not that work is defective.

938 F.2d at 603.   See also Travelers Ins. Co. v. Volentine, 578
S.W.2d 501, 503-04 (Tex. Civ. App.--Texarkana 1979, no writ).
With reference to an exclusion comparable to exclusionary
language contained in the insurance policy in question, the Texas
court said in Volentine that:

> Similar and even identical policy provisions have on
> many occasions been construed by the courts, and it has
> been uniformly held that a liability policy containing
> such an exclusion does not insure the policyholder
> against liability to repair or replace his own
> defective work or product, but it does provide coverage
> for the insured's liability for damages to other
> property resulting from the defective condition of the
> work, even though injury to the work product itself is
> excluded.

578 S.W.2d at 503-04.   The rule stated in Volentine was applied
as a reason for affirming the trial court's grant of summary
judgment for the insurer in Sarabia v. Aetna Casualty & Surety

22

Co., 749 S.W.2d 157 (Tex. App.--El Paso 1988, no writ).

Exclusions identical to j.(5) and (6) formed a basis for grant of

summary judgment for the insurer in Malone v. Scottsdale

Insurance Co., 147 F. Supp. 2d 623, 628-29 (S.D. Tex. 2001), a

case factually similar to the instant case.

For the reasons given under this subheading, the damages of

which the Blakes complained in their state court suit did not

constitute "damages because of . . . 'property damage' to which

[Mid-Continent's] insurance applies," Mot., App. at 211, with the

consequence that Mid-Continent is entitled to a summary

adjudication that the insurance coverage of the policy it issued

to Lewis is not applicable to the Blakes' claim against Lewis.

3.   Exclusion l.

Exclusion l. reads, in pertinent part,

This insurance does not apply to:

l.   Damage To Your Work

    "Property damage" to "your work" arising out of it
    or any part of it and included in the "products-
    completed operations hazard".

Id. at 243.

The court recognizes that exclusion l. had as its goal

helping make clear that the insurance policy did not extend to

damage to a building being constructed by a contractor-insured if

23

the damage arose out of the contractor's work.  The court has the
impression that exclusion 1. probably was intended to fill in any
gaps left in that area by the wording of exclusions j.(5) and
(6).  For instance, exclusion j.(6) would not have prevented
coverage if the products-completed operations hazard had been
applicable.  Had that been the case, exclusion 1. would have been
applicable, and would have caused there not to be insurance
coverage for the Blakes' claim against Lewis.  Because the record
indicates that the "property damage" in question was not included
in the products-completed operations hazard, the court declines
to rule for Mid-Continent on the basis of exclusion 1.

G.    Mid-Continent Has No Defense or Payment Obligation
      Under the Insurance Policy

      The court is granting Mid-Continent's motion for summary
judgment for the reason that exclusions j.(5) and (6) of the
insurance policy cause the insurance not to apply to the Blakes'
claim against Lewis.  For that reason, the Blakes' claim and
state court suit are outside the basic payment and defense
obligations of the insurance policy.  Supra at 14.  There is no
payment obligation because the insuring agreement obligates Mid-
Continent to "pay [only] those sums that the insured becomes
legally obligated to pay as damages because of . . . 'property

24

damage' to which this insurance applies"; and, Mid-Continent has

no defense obligation in reference to the state court suit

because the only defense obligation the policy imposed on Mid-

Continent was "to defend the insured against any 'suit' seeking

those damages," and the policy expressly says that Mid-Continent

would "have no duty to defend the insured against any 'suit'

seeking damages for . . . 'property damage' to which this

insurance does not apply." Mot., App. at 211.[3]

## V.

### Order

For the reasons stated above,

The court ORDERS that Mid-Continent's motion for summary

judgment be, and is hereby, granted;

The court further ORDERS that Lewis have and recover nothing

from Mid-Continent, and that Lewis's claims against Mid-Continent

be, and are hereby, dismissed; and

---

[3]As part of Mid-Continent's argument that it does not have a defense obligation, Mid-Continent devotes attention to what the Texas courts call the "eight corners" rule. Mid-Continent argues against a duty to defend on the assumption that such a rule applies in this case. The court would agree that even if the "eight corners" rule did apply to this case, Mid-Continent would not have a defense obligation. However, the court notes that Mid-Continent has overlooked the fact that the wording of the defense obligation in its insurance policy is such that the "eight corners" rule does not apply to the defense obligation imposed by its policy. See B. Hall Contracting Inc. v. Evanston Ins. Co., 447 F. Supp. 2d 634, 644-46 (N.D. Tex. 2006), rev'd on other grounds, B. Hall Contracting Inc. v. Evanston Ins. Co., 273 F. App'x 310 (5th Cir. 2008).

The court further ORDERS and DECLARES that (a) Mid-Continent does not now have, and has not had, any obligation to provide a defense to Lewis in Cause No. 017-225074-07 in the District Court of Tarrant County, Texas, 17th Judicial District, and (b) Mid-Continent shall have no obligation to pay any amount to reimburse Lewis for any payment it has made, or makes, to or on behalf of the Blakes as to the claim made against Lewis by the Blakes in such suit or in connection with the settlement thereof or by reason of any of the facts or circumstances alleged by the Blakes against Lewis in such suit.

SIGNED April ___, 2010.

_____
JOHN McBRYDE
United States District Judge

26